IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                        |
|------------------------------|---|------------------------|
| **MIKE SARE,**               | * |                        |
|                              | * |                        |
| Plaintiff,                   | * | Case No.: RWT 08cv1567 |
|                              | * |                        |
| v.                           | * |                        |
|                              | * |                        |
| **ELECTRONIC DATA SYSTEMS, LLC** | * |                    |
|                              | * |                        |
| Defendant.                   | * |                        |
|                              | * |                        |

## MEMORANDUM OPINION

Plaintiff Mike Sare brings racial and gender employment discrimination claims under Montgomery County Code ("MCC") § 27-19 against Electronic Data Systems, LLC ("EDS"). EDS moves for summary judgment. Because Plaintiff has failed to make out a prima facie case of gender or racial discrimination, the Court grants EDS's Motion for Summary Judgment (Paper No. 24).

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an African American male, was hired by EDS in December of 1990 as a File Clerk at EDS's offices in Rockville, Maryland. (Pl.'s Dep. 35–36, 40.) In 1995, Plaintiff was promoted to an Underwriter position. (Id. at 41.) At that time, the tasks of an Underwriter included processing flood insurance applications and answering incoming telephone calls. (Pl.'s Dep. 42–43, Ex.8.)

In 2003, Plaintiff's white supervisor, John Hintermister, prepared a "Performance Assessment" for Plaintiff's 2003 performance year, which Plaintiff reviewed and signed. (Pl.'s Dep. 56–58, 62, Ex.10.) Plaintiff received an overall performance rating of "Below Expectations," which was the lowest possible rating under EDS's performance management

process. (Pl.'s Dep. Ex.10; Hintermister Decl. ¶ 6.) In Plaintiff's 2003 Performance Assessment, Mr. Hintermister commented that Plaintiff must "work on his time management skills, arrive to work on time, spend less time away from [his] desk, and reduce his [time making telephone calls]," as well as increase the number of applications he processed. (Pl.'s Dep. Ex.10.)

Mr. Hintermister also rated Plaintiff's 2004 and 2005 performance years as "Below Expectations," both of which Plaintiff also reviewed and signed. (Pl.'s Dep. 68–70, Ex.11–12.) In the 2004 Performance Assessment, Mr. Hintermister commented that Plaintiff must "improve upon both his phone and production numbers to meet expectations" and reduce his time making calls. (Pl.'s Dep. Ex.11.) In the 2005 Performance Assessment, Mr. Hintermister noted that Plaintiff continued to "struggle with production numbers (phone/process)." (Id. Ex.12)

In 2005, EDS reorganized its Underwriters into two groups: the Processing group and the Contact Center. (Pl.'s Dep. 73; Hintermister Decl. ¶ 9.) The Processing group processed the flood insurance applications, while the Contact Center answered telephone calls. (Hintermister Decl. ¶¶ 10–11.) At the end of 2005, Plaintiff was assigned to the Contact Center. (Id. ¶ 14.)

According to Tyrone Gregory, Plaintiff's African American Supervisor at the Contact Center, Plaintiff's performance at the Contact Center was below the average performance of his co-workers. (Gregory Decl. ¶ 13.) On December 21, 2005, Mr. Gregory counseled Plaintiff via e-mail to watch his time spent on making calls (Pl.'s Dep. 79–80, Ex.15.) One month later, Mr. Gregory met with Plaintiff regarding his performance and placed him on a verbal warning, which was memorialized in a memorandum. (Pl.'s Dep. 83–4; Gregory Decl. ¶¶ 14–15, Ex.B.)

On April 12, 2006, Mr. Gregory placed Plaintiff on a Performance Improvement Plan ("PIP"). (Pl.'s Dep. 84–86, Ex.17; Gregory Decl. ¶ 19.) The PIP stated that Plaintiff had been

answering the lowest volume of telephone calls of the entire Underwriting team and that he frequently exceeded the allowable amount of time to make telephone calls. (Pl.'s Dep. 86, Ex.17; Gregory Decl. ¶¶ 16–18, Ex.C–D.) It also warned Plaintiff that a lack of improvement may result in separation from EDS without another warning or improvement plan. (Pl.'s Dep. Ex.17.)

During the week after Plaintiff was placed on the PIP, Plaintiff failed to work scheduled hours, spent excessive time making telephone calls, and abandoned telephone calls. (Gregory Decl. ¶ 20–24 Ex.E.) On April 19, 2006, Mr. Gregory, then Contact Center Operations Manager, terminated Plaintiff's employment. (Id. ¶ 26–28.)

One year later, on April 17, 2007, Plaintiff filed a Charge of Discrimination with the Montgomery County Maryland Office of Human Rights, alleging that he was terminated from EDS because of his race in violation of Article I, Section 27-19 of the Montgomery County Code. (Pl.'s Dep. 31–32, Ex.3 & 4.) On November 5, 2007, the Montgomery County Office of Human Rights found that there were no reasonable grounds to believe EDS engaged in any unlawful discriminatory practices. (Pl.'s Dep. 33, Ex.4.)

On April 18, 2008, Plaintiff brought this lawsuit against EDS in the Circuit Court for Montgomery County, Marlyand, alleging that he was terminated because of his race and gender.[1]

---

[1] During his deposition and in his response to Defendant's Motion for Summary Judgment, Plaintiff seemingly attempts to raise a failure to promote claim arising out of his assignment to the Contact Center instead of the Processing group. (Pl.'s Dep. 73, 113–14; Pl.'s Opp'n ¶ 7.) Plaintiff did not raise a failure to promote claim in his Complaint or with the Maryland County Human Rights Commission. As a result, the Court will not address his apparent failure to promote claim, except to say that Plaintiff presented no evidence that assignment to the Processing group was a "promotion" or that he was qualified to be in the Processing group, especially in light of Mr. Gregory's statement that assignment to the Processing Group was not a promotion and the evidence reflecting Plaintiff's poor performance at processing flood insurance applications. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959–60 (4th Cir.

(Compl. 6–7; Pl.'s Dep. 33–34.) EDS filed a timely notice of removal, pursuant to 28 U.S.C. § 1441, and the matter was removed to this Court on June 16, 2008, based on the amount in controversy and diversity of the parties.

## STANDARD OF REVIEW

In evaluating a summary judgment motion, the court must assess whether there are any issues of material fact and whether the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 302 (4th Cir. 2006); Fed. R. Civ. P. 56. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## ANALYSIS

Article 49B, § 42 of the Maryland Code Annotated authorizes a civil action for damages or other relief in Montgomery County by "a person who is subjected to an act of discrimination prohibited by the county code." Racial and gender discrimination, as alleged here, are prohibited by MCC § 27-19(a)(1)(A), which states that an employer must not discharge any individual because of race or sex or because of any reason that would not have been asserted but for race or sex. Article 49B, § 42 of the Maryland Code Annotated is substantially similar to federal anti-

---

1996) (explaining that a prima facie case of failure to promote requires the plaintiff to establish that there was an open position for which he applied and was qualified).

discrimination law.  See Magee v. Dansources Tech. Serv., Inc., 137 Md. App. 527, 549 (Md. App. 2001).

Under federal anti-discrimination law, Plaintiff's discriminatory discharge claim is subject to the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1983).  To state a prima facie case of race or gender discrimination, Plaintiff must show (1) that he is a member of a protected class; (2) that he was discharged; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.  See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310 (1996); Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989).

If Plaintiff establishes a prima facie case, then the burden shifts to EDS to advance a legitimate nondiscriminatory reason for terminating Plaintiff's employment.  McDonnell, 411 U.S. at 802.  If EDS successfully proffers such an explanation, then the burden shifts back to Plaintiff to show that the proffered reason is merely a pretext hiding discriminatory motives.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Plaintiff has not satisfied the third element of his prima facie case.  Plaintiff presents no evidence that he was performing at a level that met EDS's legitimate expectations.  Instead, he avers that Mr. Gregory and Mr. Hintermister "made up facts" regarding his performance and that he performed well generally.  (Pl.'s Opp'n 1, 3, & 5.)  Plaintiff's personal belief that his performance was satisfactory is insufficient to meet his burden of establishing a prima facie discrimination case at the summary judgment stage.

Assuming <u>arguendo</u> that Plaintiff had established a prima facie case, EDS advanced a legitimate nondiscriminatory reason for terminating Plaintiff's employment.  The facts show that EDS discharged Plaintiff because of his continued poor performance and violation of his PIP.  From 2003 until his termination, Plaintiff's performance was rated as "Below Expectations."  (Pl.'s Dep. Ex.10–12.)  Plaintiff was counseled by EDS managers and supervisors on numerous occasions regarding his performance and received a verbal warning in January of 2008 from Mr. Gregory.  (Pl's Dep. 83–84; Gregory Decl. ¶¶ 14–15, Ex.B.)  Plaintiff was subsequently placed on a PIP, which required him to demonstrate improvement.  (Pl.'s Dep. 84–86.)  Rather than improve, Plaintiff violated the PIP on multiple occasions during the very first week it was issued.  (Gregory Decl. ¶¶ 20–27.)

Plaintiff does not come forth with any evidence that EDS's reason was a pretext hiding discriminatory motives.  Plaintiff states that he "feel[s]" he was terminated because of his race, but does not support that belief with facts or evidence.  (Pl.'s Dep. 100–01.)  In fact, he admits that Mr. Gregory did not discriminate against him, and Mr. Gregory made the decision to terminate him.  (Pl.'s Dep. 106; Gregory Decl. ¶ 26.)  In addition, Plaintiff admits that he never heard anyone at EDS make disparaging comments about the fact that he was African American or male.  (Pl.'s Dep. 100–01.)  He also claims without support that EDS did not hire African American employees and that African American employees were not selected for the Processing group.  (Pls.' Opp'n 1, 3.)  The evidence reflects, however, that approximately two-thirds of the employees selected for both the Contact Center and Processing group were African American.  (Hintermister Decl. ¶ 18, Ex.A.)  Plaintiff's unsubstantiated allegations cannot overcome EDS's motion for summary judgment.

For the foregoing reasons, Defendant's Motion for Summary Judgment will, by separate order, be granted.

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE
